UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FOOD MANAGEMENT GROUP, LLC,<br>KMA I, INC.,<br>KMA 2, INC.,<br>KMA III, INC.,<br>BRONX DONUT BAKERY, INC.,<br><br>                       Debtors.<br><br>CONSORTIUM PROPERTIES, LLC,<br><br>                       Plaintiff,<br><br>       v.<br><br>ELIAS KASTRANDES and CATHERINE KASTRANDES,<br><br>                       Defendants. | Case No. 14-MC-166 (KMK)<br><br>OPINION & ORDER |

KENNETH M. KARAS, District Judge:

On April 8, 2014, Bankruptcy Judge Robert S. Drain granted Plaintiff Consortium Properties, LLC's ("Plaintiff") Motion for Summary Judgment, and denied Defendants Elias Kastrandes and Catherine Kastrandes' ("Defendants") Cross-Motion for Summary Judgment. (Pl.'s Decl. in Opp'n to Defs.' Mot. for Leave to Appeal (May 29, 2014) ("Pl.'s Decl.") Ex. A, at 2–3 (Dkt. No. 2) (Order granting summary judgment).)  On May 29, 2014, Defendants filed a Motion for Leave to Appeal with this Court pursuant to 28 U.S.C. § 158(a)(3).  (Defs.' Mot. for

Leave to Appeal (May 29, 2014) ("Mot.") (Dkt. No. 1).)[1]  For the following reasons, Defendant's Motion for Leave to Appeal is denied.  The Court also finds that the bankruptcy court's decision is not yet appealable as of right, because it is not yet final.

## I.   BACKGROUND

While a recitation of the full background of the case is unnecessary for purposes of the instant Motion, the following is a brief summary of the relevant facts and procedural history.[2]  On November 25, 2008, Plaintiff purchased from a bankruptcy-court-appointed Trustee all "right, title, and interest" in, inter alia, certain sums owed to the Trustee by Stacey Gianopoulos and her husband, Gus (the "Debtors"), "under a . . . Settlement Agreement [they] entered into [on] July 25, 2007." (Pl.'s Decl. Ex. C ("Pl.'s 56.1") ¶¶ 2–4, 9; *see also* Mot. 2 (describing this purchase).)  The Settlement Agreement arose from a series of adversary proceedings commenced by the Trustee as part of jointly-administered bankruptcy cases involving Food Management Group, LLC and other bankrupt parties, and required that the Debtors "take various actions to preserve and protect certain properties to ensure that they would be available" to satisfy the amount owed under the Settlement Agreement.  (Pl.'s 56.1 ¶¶ 1, 5, 9.)  Moreover, under a prior Order of the bankruptcy court (the "Attachment Order"), the Debtors and "'those persons in active concert or participation with them'" agreed not to "'encumber[] any interest in real or

---

[1] While the Motion is dated April 22, 2014, the Court will refer to the filing dates that appear on the docket for this document and all other documents filed in connection with this Action.  (*See* Dkt.)

[2] There are some discrepancies between the facts alleged in Defendants' Motion and the facts set forth by Plaintiff.  Because Defendants expressly did not dispute the facts set forth in Plaintiff's 56.1 Statement filed as part of Plaintiff's Motion for Summary Judgment, (*see* Pl.'s Decl. Ex. C ("Pl.'s 56.1"); Pl.'s Decl. Ex. D (Defendants' Counter-Statement of Disputed Facts, stating that "Defendants do not dispute any of the Plaintiff's facts contained in Plaintiff's Statement of Material Facts no in Dispute")), the Court treats those facts as controlling here.

personal property.'"  (Pl.'s 56.1 ¶ 20; *see also* Pl.'s Decl. Ex. B ("April 2014 Bench Ruling"), at 31 (describing the Attachment Order).)

On or about May 22, 2007, the Debtors entered into a stipulation with the Trustee (the "Florida Stipulation") and Defendants—Stacey Gianopoulos's parents— modifying the Attachment Order by granting the Debtors leave to convey certain Florida property (the "Property") to Defendants such that Defendants could take out a second mortgage on the Property, with the purpose of clearing outstanding mortgage debt, and then convey the property back to the Debtors, subject to the new mortgage.  (Pl.'s 56.1 ¶¶ 18–24, 26; *see also* Mot. 2–4 (describing this arrangement).)[3]  As part of the Florida Stipulation, the Debtors and Defendants "'represented and warranted that they [would] not create or suffer an[y] lien, claim[,] or encumbrance to be put on the . . . [P]roperty, except for [the] [n]ew [m]ortgage.'"  (Pl.'s 56.1 ¶ 23; *see also* April 2014 Bench Ruling at 32 (describing the Florida Stipulation).)  The Debtors and Defendants completed the course of conduct agreed to in the Florida Stipulation in May 2007.  (Pl.'s 56.1 ¶¶ 28–31; Mot. 4–5.)

On July 30, 2008, Stacey Gianopoulos, allegedly on behalf of herself and her husband, "executed a quitclaim deed . . . transfer[ring] the . . . Property back to the [Defendants]."  (Pl.'s 56.1 ¶ 34; *see also* Mot. 5 (same).)  For that reason, on July 3, 2012, Plaintiff moved in bankruptcy court for an order holding the Debtors and Defendants in contempt for "their involvement in the [a]ttempted [t]ransfer of the . . . Property."  (Pl.'s 56.1 ¶ 39 (discussing motion); *see also* Mot. 5 (noting that Plaintiff sought a "contempt citation" against the Debtors and Defendants); April 2014 Bench Ruling at 34–35 (noting Plaintiff moved "to hold [Debtors]

---

[3] Judge Drain refers to the Florida Stipulation as issued by the bankruptcy court on May 11, 2007.  (April 2014 Bench Ruling at 31.)  The exact date is immaterial.

3

and [Defendants] in contempt of the Florida [S]tipulation").)  In a September 20, 2012 bench ruling, later embodied in an October 1, 2012 Order, Judge Drain declined to hold Defendants in contempt, finding that the July 30, 2008 transfer did not "'expressly violate'" the Florida Stipulation.  (Pl.'s 56.1 ¶¶ 43–46; *see also* Mot. 5 (describing Judge Drain's ruling).)[4]  However, because the transfer was "'very clearly a potential violation'" of the Attachment Order, Judge Drain instructed the Debtors and Defendants to revoke the transfer, warning that they may otherwise be held liable.  (Pl.'s 56.1 ¶¶ 47–48; *see also* Mot. 6 (describing Judge Drain's ruling).)

Plaintiff filed the instant adversary Action against Defendants in bankruptcy court on May 9, 2013, "claiming that Defendants' receipt of the . . . [P]roperty as grantees," and their subsequent refusal to disclaim title, "was in violation of the Florida Stipulation and in contempt of the [Attachment Order]."  (Mot. 6; *see also* Pl.'s Decl. ¶ 34; Pl.'s 56.1 ¶ 51.)[5]  On April 4, 2014, after the Parties filed competing summary judgment motions on this issue, Judge Drain issued a bench ruling granting summary judgment to Plaintiff and denying Defendants' Cross-Motion for Summary Judgment, which ruling was later embodied in an April 8, 2014 Order.  (Mot. 6–7; Pl.'s Decl. Ex. A, at 2-3 (Order granting summary judgment); Bench Ruling at 50.)  Judge Drain found that Defendants were "in contempt" of the Attachment Order, and breached an "implied covenant of good faith and fair dealing" in the Florida Stipulation.  (Bench Ruling at 48–50.)

---

[4] Judge Drain refers to the bench ruling as occurring two days later, on September 22, 2012.  (*See* April 2014 Bench Ruling at 35.)  The exact date is immaterial.

[5] On May 13, 2013, Defendants filed a disclaimer disavowing their interest in the Property.  (Pl.'s 56.1 ¶¶ 57–59; *see also* Mot. 6 (discussing the disclaimer).)

The issue on appeal, as explained by Defendants, "involves an inquiry into the legal effect of the July 30, 2008 transfer" of the Property by the Debtors to Defendants. (Mot. 7.)

## II.  DISCUSSION

A. <u>Leave to Bring an Interlocutory Appeal</u>

"[A] district court has appellate jurisdiction over bankruptcy court decisions if the court order or judgment is final or if the district court grants leave to appeal from an interlocutory order or decree." *North Fork Bank v. Abelson*, 207 B.R. 382, 386 (E.D.N.Y. 1997) (citing 28 U.S.C. § 158(a)). Because the Motion before the Court is a motion for leave to appeal, the Court will first take up the permissive prong of the Court's potential jurisdiction over Defendants' appeal.

Title 28 United States Code Section 158(a)(3) provides that, "with leave of the court," a district court has jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges who serve in the same judicial district. *See also* Fed. R. Bankr. P. 8004 (providing procedure for appeal by leave). Such jurisdiction is "discretionary." *In re Futter Lumber Corp.*, 473 B.R. 20, 26 (E.D.N.Y. 2012); *see also In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003) ("Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court."). A district court may grant leave to appeal if the three factors that govern the jurisdiction of the federal courts of appeals under 28 U.S.C. § 1292(b) are met, namely whether the order appealed from (1) "involves a controlling question of law," (2) is one "to which there is substantial ground for difference of opinion," and (3) is such that "an immediate appeal . . . may materially advance the ultimate termination of the litigation."

*In re Futter Lumber Corp.,* 473 B.R. at 26 (internal quotation marks omitted); *see also id.* at 26–27 (noting that all three requirements must be met (citing 28 U.S.C. § 1292(b)); *Abelson*, 207 B.R. at 387 (noting that because "[s]ection 158 . . . does not provide any criteria for determining whether a district court should grant leave to permit an interlocutory appeal in a particular case[,] . . . . district courts have adopted the standard set forth in 28 U.S.C. § 1292(b) . . . ," and collecting cases).

The Court declines to grant leave to appeal because there is no substantial ground for a difference of opinion about the issue on appeal. In particular, the Court finds that "there is [no] conflicting authority on the issue," and that "the issue is [not] particularly difficult and of first impression." *In re Futter Lumber Corp.,* 473 B.R. at 29; *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Montonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (noting that there may be substantial grounds for a difference of opinion when the issue in question is "difficult and of first impression").

Under Florida law, as Defendants contend, an individual generally cannot unilaterally transfer property held with his or her spouse as a tenancy "by the entireties." (Mot. 9.) *See Schmidt v. Matilsky*, 490 So. 2d 237, 238 (Fla. Dist. Ct. App. 1986) ("It is well established law in Florida that a husband and wife owning property in an estate by the entireties must join in any conveyance thereof."). Defendants argue, therefore, that because Stacey Gianopoulos acted on her own, the "quitclaim deed was legally ineffective," and cannot constitute an encumbrance in violation of the Florida Stipulation and Attachment Order. (Mot. 7, 9–10.) As Judge Drain recognized, however, a unilateral transfer "may take place if in the transaction one spouse[,] with full knowledge of the facts[,] [allows] the other spouse[] [to act as] his or [her] agent." (April 2014 Bench Ruling at 38 (citing *Murray v. Sullivan,* 376 So. 2d 886, 889 (Fla. Dist. Ct. App.

1979)).)  *See also Schmidt*, 490 So. 2d at 238 ("[S]uch alienation may take place if in the transaction one spouse, with full knowledge, constitutes the other spouse as his or her agent and acquiesces to the act of alienation by the agent spouse.").  Defendants nonetheless argue that because the application of such exception requires "clear and convincing" evidence of an agent relationship, *Schmidt*, 490 So.2d at 238 ("Before such an exception is applicable to effectuate a transfer by only one spouse, the evidence must be clear and convincing that such a transfer (1) does not adversely affect the interest of the other spouse[,] and (2) is done with the full knowledge, assent[,] and acquiescence of such other spouse."), and because there is "no evidence that Stacey acted with the authorization of Gus," the transfer did not violate the Florida Stipulation or the Attachment Order.  (Mot.7, 9–10.)

    Judge Drain, in considering this issue, ruled that because "evidence must be considered to determine whether the exception applies or not[,] and given the fact of the quit claim[sic] deed which on its face says it's on behalf of both [Debtors,] it is clear that the quit claim[sic] deed was indeed an encumbrance on the property."  (April 2014 Bench Ruling at 38.)  The Court agrees.  Even if, after considering the evidence, the transfer of the property at issue was not done with both spouses' knowledge, it is nonetheless still an encumbrance on the title that Plaintiff would have to clear by separate action.  *See Bastys v. Rothschild,* No. 97-CV-5154, 2000 WL 1810107, at *39 (S.D.N.Y. Nov. 21, 2000) ("A 'cloud on title,' as that term[] is generally used, is an *apparent* title or encumbrance that is in fact invalid." (emphasis added)); *id.* ("[A] cloud on title may be an outstanding instrument, record, claim, or encumbrance that is actually invalid or inoperative, but which may nevertheless, because of its apparent validity, impair or affect injuriously the title to property." (internal quotation marks omitted)); 65 Am. Jur. 2d *Quieting Title* § 16 (2014) ("[A] quiet title action may be based on an instrument that is invalid on its face,

and that, if the instrument or encumbrance complained of is capable of embarrassing the title of the owner, it may constitute a removable cloud even if it is not valid on its face." (footnotes omitted)). *But see Boulware v. Mayfied*, 317 So. 2d 470, 472 (Fla. Dist. Ct. App. 1975) ("To be a cloud upon a record title, the claim may be invalid, while only lawful or valid claims violate the covenants as to encumbrances."). The only authorities that Defendants cite on this issue pertain to the fact that transfers of property by one spouse alone are not valid; they do not suggest that transfers of this sort are not an encumbrance on title.

Florida law notwithstanding, Defendants also argue that the Florida Stipulation "imposed an obligation upon the Defendants only to re-convey the . . . [P]roperty back to" the Debtors after obtaining a mortgage, and that Defendants therefore did not violate the Florida Stipulation by failing to immediately take action when the Debtors conveyed the Property back to them. (Mot. 10.)[6] The plain language of the Florida Stipulation indicates otherwise. Under the Florida Stipulation, the Debtors, *together with the Defendants*, "'represented and warranted that they [would] not create or suffer an[y] lien, claim[,] or encumbrance to be put on the . . . [P]roperty[,] except for the new mortgage.'" (Pl.'s 56.1 ¶ 23; *see also* April 2014 Bench Ruling at 32 (describing the Florida Stipulation).) By failing to act to clear title until after the instant Action was filed, (Pl.'s 56.1 ¶¶ 57–59), Defendants permitted an encumbrance on the Property to persist, and therefore violated the Florida Stipulation. Alternatively, while Judge Drain found that Defendants did not expressly violate the Florida Stipulation, Defendants cite no case law, nor do they make any arguments beyond the aforementioned assertion that the Florida Stipulation does not apply to Defendants' conduct, in response to Judge Drain's holding that Defendants breached an "implied covenant of good faith and fair dealing" under the Florida Stipulation. (April 2014

---

[6] Defendants do not make this argument about the Attachment Order.

Bench Ruling at 48–50.)  Because "'[m]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion,'" *In re Futter Lumber Corp.*, 473 B.R. at 29 (alteration in original) (quoting *In re Cross Media Marketing Corp.*, No. 07-CV-878, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007)), Defendants have not demonstrated a substantial ground for a difference of opinion on this issue.  The Court therefore denies Plaintiff's Motion for Leave to Appeal.[7]

B. Appeal as of Right

Federal Rule of Bankruptcy Procedure 8003(a) provides that an appeal as of right from a "judgment, order, or decree of a bankruptcy court" may be taken as permitted by 28 U.S.C. § 158(a)(1), which provides jurisdiction to district courts to hear appeals from "*final* judgments, order, and decrees . . . of bankruptcy judges," 28 U.S.C. § 158(a) (emphasis added); *see also Abelson*, 207 B.R. at 386 (same).

"[I]n the bankruptcy context, the standard for finality is more flexible than in other civil litigation," in that it is "viewed functionally, focusing on pragmatic considerations rather than on

---

[7] The Court may also grant leave to appeal from an interlocutory order in "'exceptional circumstances.'"  *Abelson*, 207 B.R. at 387 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S 463, 475 (1978)).  However, the Court does not find, nor do Defendants allege, any such circumstances here.
  Of note, Defendants do suggest that the Court should grant leave to appeal for purposes of judicial economy, (Mot. 9), citing *In re Marvel Entertainment Group*, 140 F.3d 463 (3rd Cir. 1998), (Defs.' Reply (May 29, 2014) 4–5 (Dkt. No. 3)), which notes that "[a] finality determination in a bankruptcy appeal involves consideration of such factors as the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered." *Id.* at 470 (internal quotation marks omitted).  Setting aside the fact that Defendants cite no Second Circuit case law in support of this claim, there is a clear judicial economy interest in respecting finality, namely avoiding "the inconvenience and cost of piecemeal review." *In re Chateaugay Corp.*, 922 F.2d 86, 90 (2d Cir. 1990).  Additionally, while Judge Drain's decision certainly has a "preclusive effect," it does not prevent a determination of the amount of damages to be awarded, which, as discussed below, the Second Circuit has made clear is a requirement for the judgment to be rendered final.

technicalities." *In re Lehman Bros. Holdings Inc.*, 697 F.3d 74, 77 (2d Cir. 2012); *see also In re Chateaugay Corp.*, 922 F.2d 86, 90 (2d Cir. 1990) ("Th[e] finality determination must be made in the context of the less rigid finality requirements of section 158(d) . . . ."). While, in general, an order is final if it "finally dispose[s] of discrete disputes within the larger case," *In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012), there is no "bright-line or talismanic test by which . . . to assess the finality of a bankruptcy court determination," *In re Premier Operations, Ltd.*, 290 B.R. 33, 42 (S.D.N.Y. 2003).

     Here, Judge Drain's decision is not a final, appealable order because the decision left the issue of the proper amount of damages to be awarded to Plaintiff unresolved. (*See* Pl.'s Decl. Ex. A, at 2 (noting that the amount of damages would "be determined on inquest"); Bench Ruling at 36 ("Obviously the issue of damages is not [the] subject of this summary judgment motion); *id.* at 50–52 (discussing discovery schedule for damages).) "[F]or a bankruptcy court order to be final . . . the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Prudential Lines*, 59 F.3d 327, 331 (2d Cir. 1995) (emphasis and internal quotation marks omitted). Even when applying more lenient standards of finality applicable in the bankruptcy context, "with respect to a meritorious claim for damages, the dispute is not completely resolved," and thus not appealable by right, "until the bankruptcy court determines the amount of damages to be awarded." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 776 (2d Cir. 1992); *see also In re 127 John St. Assocs.*, No. M-47, 93-B-46171, 2005 WL 911488, at *4 (S.D.N.Y. Apr. 18, 2005) ("If an order resolves one element of a dispute but contemplates further proceedings to resolve other matters, it does not qualify as a final order."); *In re Duke & Benedict, Inc.*, 278 B.R. 334, 343 (S.D.N.Y. 2002) ("The holding of non-finality is also

supported by the fact that none of the relief sought in [the] appellees' complaint has been granted."); *accord In re Morrell*, 880 F.2d 855, 856-57 (5th Cir. 1989) (holding that a bankruptcy court order finding creditor liable for violating an automatic stay, but not determining damages, was not a final order). Therefore, because Judge Drain has not yet determined the amount of damages to which Plaintiff is entitled, Defendants may not yet appeal his Summary Judgment Order as of right.[8]

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Leave to Appeal is denied. The Court also finds that the bankruptcy court's Summary Judgment Order to Plaintiff is not a final judgment because the amount of damages has not yet been determined. Therefore, Defendants may not yet appeal as of right. This Order is without prejudice to Defendants' right to appeal after the bankruptcy court determines the amount of damages to which Plaintiff is entitled. The Clerk of the Court is respectfully requested to terminate the pending Motion. (Dkt. No. 1.)

SO ORDERED.

Dated: January 23, 2015
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[8] An appeal as of right is sometimes also available under the collateral order exception to the final judgment rule. *See Abelson*, 207 B.R. at 387 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949)). To fall within the exception, the decision at issue must "'[1] . . . conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action[], and [3] be effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Coopers & Lybrand*, 437 U.S at 468). Because the issue on appeal here plainly pertains to the merits, and because Defendants' rights on this issue will not be "'irretrievably lost in the absence of an immediate appeal,'" *id.* (quoting *In re Johns-Manville Corp.*, 824 F.2d 176, 181 (2d Cir. 1987)), the collateral order exception does not apply here, nor have Defendants alleged that it does.